HENRY P. BOWDITCH & others, trustees, *vs.* SUPERINTENDENT
OF STREETS OF BOSTON.

Suffolk.   November 12, 1896. — May 13, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Certiorari — Sewer — Construction of Order — Validity of Assessment — Statute.*

Certiorari will lie to quash an alleged invalid assessment for the cost of a sewer, levied by the superintendent of streets of Boston, under St. 1892, c. 402, upon estates abutting on the street in which the sewer is built.

The superintendent of streets of a city was ordered by the mayor and aldermen to make a sewer in a certain street, "said sewer to be of 15 inch and 12 inch earthen pipe and located as shown on a plan on file" in his office. According to the plan a portion of the sewer was to be built of 24 inch pipe. *Held*, on a petition for a writ of certiorari to quash an assessment for the cost of the sewer, that the order and plan were to be taken together; and that there was no error on the part of the superintendent of streets, or failure to comply with the order, in building a portion of the sewer of 24 inch pipe.

The neglect of the superintendent of streets of Boston, who is ordered by the mayor and aldermen, under the authority of St. 1892, c. 402, to build a sewer in a certain street, to invite by advertisement proposals for its construction, and to take a bond or other security for the performance of the contract, as required by St. 1890, c. 418, §§ 4-6, the estimated cost of the same having exceeded $2,000, renders an assessment upon the estates abutting on the street for the cost of the sewer invalid.

The writing of "Approved" by the mayor on a letter written by the superintendent of streets of Boston asking the mayor's approval of his action in letting the contract for the construction of a sewer ordered by the mayor and aldermen to be built, under the authority of St. 1892, c. 402, and the estimated cost of which exceeds $2,000, without advertising for proposals or taking security for the performance of the contract, is not a compliance with St. 1890, c. 418, §§ 4-6; and the latter statute is not repealed by St. 1892, c. 402.

PETITION, filed July 18, 1895, for a writ of certiorari, to quash an assessment made by the respondent upon the estates

of the petitioners on account of the construction of a sewer in Pond Street in Boston. Hearing before *Barker*, J., who reserved the case for the determination of the full court; such decree to be entered therein as justice might require. The facts appear in the opinion.

*H. L. Harding*, for the petitioners.

*T. M. Babson*, for the respondent.

MORTON, J. This is a petition for a writ of certiorari to quash certain sewer assessments made by the respondent as superintendent of streets of the city of Boston on estates of the petitioners abutting on the street in which the sewer was built.

The first question is whether certiorari lies. The respondent contends that it does not, because, first, he is an executive officer performing a purely ministerial duty in levying the assessments, and, secondly, if that is not so, because the remedy is by petition for abatement.

The assessments were made by virtue of the provisions of St. 1892, c. 402. By § 1 of that act the mayor and aldermen may order the superintendent of streets to make sewers, and he is bound to carry out the orders thus passed. By §§ 2 and 3, the expenses of the work so ordered are to be assessed to an amount not exceeding four dollars per lineal foot of sewer on the parcels of land bounding on the highway or strip of land in which the sewer is built, and the superintendent of streets is directed to apportion this assessable cost amongst these parcels in a manner therein provided. In other words, he is to determine what the assessable cost is, and then to apportion it amongst certain estates; and we think that in doing this he acts judicially, and that therefore certiorari will lie to correct any errors of law affecting the assessment. *Snow* v. *Fitchburg*, 136 Mass. 179. *Attorney General* v. *Northampton*, 143 Mass. 589.

Of the remedy by abatement it is to be said that this is not a case in which the aggrieved parties are seeking relief on the ground that the assessments are too large, or that their estates have been overvalued, or for any other like reason. They contend, on the contrary, that the assessments are wholly invalid by reason of the failure of the superintendent of streets to

comply with certain statutory or other requirements, whose observance they insist was essential to a valid assessment. In such a case it is plain that certiorari is a proper remedy. *Butler* v. *Worcester*, 112 Mass. 541, 556. *Kelso* v. *Boston*, 120 Mass. 297. *Taber* v. *New Bedford*, 135 Mass. 162. *Snow* v. *Fitchburg, ubi supra.*

It is not contended, and we think that it could not be successfully, that certiorari will not lie because the assessments if paid might be recovered back in an action at law. *Barnard* v. *Fitch*, 7 Met. 605.

We come then to the question of the validity of the assessments. In considering this question, any facts stated by the respondent in his return or answer, and relied on by him, are to be taken as true so far as material, and unless it appears that substantial justice requires the writ to issue the petition should be dismissed; otherwise, it should be granted. *Farmington River Water Power Co.* v. *County Commissioners*, 112 Mass. 206, 212. *Dickinson* v. *Worcester*, 138 Mass. 555, 560. *Slocum* v. *Brookline*, 163 Mass. 23, 25. If the assessments were wholly invalid, it is obvious that justice would require that they should be quashed. So much of the answer or return as recites the action of the so called citizen's relief committee was not relied on at the hearing before the single justice, nor at the argument in this court, and we therefore treat it as waived.

The petitioners contend that the assessments are invalid because the superintendent of streets did not observe the requirements of the order of the mayor and aldermen in regard to the construction of the sewer, and because he did not comply with the provisions of certain statutes, and of the ordinances of the city of Boston; St. 1885, c. 266, § 6; St. 1890, c. 418, §§ 4, 6; St. 1891, c. 323, § 13; Rev. Ord. (1892), c. 36, § 7; which they insist were in the nature of conditions precedent to the construction of the sewer, whose non-observance vitiated the assessments.

It is contended that the order of the mayor and aldermen was violated, because the sewer was built, in part, of 24 inch pipe, and not wholly of 15 inch and 12 inch pipe, as it is insisted the order directed. Whether this point is well taken depends on the construction to be given to the order. The

order required the superintendent of streets to " make a sewer in Pond Street, Ward 23, between May and Avon Streets; said sewer to be of 15 inch and 12 inch earthen pipe and located as shown on a plan on file in the office of the superintendent of streets marked Pond St., West Roxbury, and dated November, 1893." The reference to the plan, we think, is not merely for the purpose of showing the location, but for the purpose of showing other details as well. The plan by the terms of the order is made a part of it, and the order is to be construed as if it read " and located all as shown," etc. The plan and the order cannot be separated, but must be taken together. And the rule would seem to be, not that one should override or control the other, except perhaps in the case of a palpable clerical mistake, but that, if there are any inaccuracies or omissions in one, they should be corrected or supplied by reference to the other in order to arrive if possible at a correct description of the sewer which the mayor and aldermen had directed to be built. *Andover* v. *County Commissioners*, 5 Gray, 393. *Grand Junction Railroad* v. *County Commissioners*, 14 Gray, 553. *Gilkey* v. *Watertown*, 141 Mass. 317. According to the plan the portions to be built of 15 inch and 12 inch pipe did not include the whole sewer, but a portion was to be built of 24 inch pipe. The order did not undertake to describe the sewer fully, but left some matters to be determined by reference to the plan ; and while the order only speaks of 12 inch and 15 inch pipe, we think that it is evident that, taking the order and plan together, a portion of the sewer was to be built of 24 inch pipe, and that there was therefore no error on the part of the superintendent of streets in building it as he did, or failure to comply with the order of the mayor and aldermen.

The petitioners further contend that the estimated cost of the sewer exceeded $2,000, and that the superintendent should have invited by advertisement proposals for its construction, as provided by statute and ordinance, and especially by St. 1890, c. 418, § 4; and that the contract which was made should have been accompanied by a bond or other security for its faithful performance, as required by §§ 5 and 6 of the same act. We understand the answer to admit in substance that the estimated cost exceeded $2,000. It is expressly conceded

that proposals were not advertised for, and that the contract was let without taking any bond or other security for its performance. In respect to the neglect to advertise, it is said in the answer that the mayor gave "written authority to do otherwise," as it is provided by statute that he may. The answer is somewhat ambiguous in this particular, but on referring to the exhibits which are made a part of it, it appears that the mayor did not give a written authority to contract without inviting proposals, unless what follows constituted such authority. A letter was addressed to him by the defendant in which the latter stated, amongst other things, that he had let two contracts which exceeded $2,000, one relating to this sewer, and requested the mayor's approval of such letting, and the mayor thereupon wrote "Approved" on the letter. The question is as to the construction to be given to the statute and the effect of this action on the part of the mayor, and the failure of the superintendent of streets to take a bond. It is obvious, we think, that the object of the statute in requiring proposals to be invited by advertisement, and in compelling parties to furnish a bond or other security, is to secure a proper expenditure of the public money and to protect the taxpayer, who ultimately will be obliged to pay the expenses, from fraud and imposition in the making of contracts relating to the construction of public works. That being so, it follows that the provisions are not directory, but are in the nature of conditions precedent to the building of a sewer, and consequently to the validity of assessments for its cost, and that the taxpayer has a right to avail himself of their non-observance as a defence to an assessment which it is sought to collect of him. *Torrey* v. *Millbury*, 21 Pick. 64. *In re Emigrant Industrial Savings Bank*, 75 N. Y. 388. *Poth* v. *New York*, 151 N. Y. 16. *Schumm* v. *Seymour*, 9 C. E. Green, 143. *Harper's appeal*, 109 Penn. St. 9, 14. Dillon, Mun. Corp. (3d ed.) §§ 466 *et seq.*

The effect of this construction is to prohibit the making and letting of contracts except in the manner provided by statute. The approval of the letting by the mayor, if what he did is to be so construed, was ineffectual. The statute contemplates on his part a precedent authority to contract without inviting proposals, not a subsequent ratification or approval of a contract

which has been made without any advertising for proposals, and which might take place months after the contract had been entered into. Nor does it matter that the cost of the sewer may not have been increased by the method that was pursued. The taxpayer has a right to insist that provisions intended for his security shall be observed, notwithstanding the fact that, in a particular case, he may have suffered no harm by reason of the neglect of the authorities to comply with them. *In re Emigrant Industrial Savings Bank, ubi supra.*

The defendant contends that, under St. 1892, c. 402, he could build the sewer by contract or not, as he saw fit. But there is nothing in that statute which expressly or by implication repeals St. 1890, c. 418, and the matters to which the two acts relate are different, as is shown in part by their titles. The first three sections of St. 1890, c. 418, relate to the tenure of office of the persons therein named. The next three relate to the manner in which contracts by the public departments shall be made. The seventh relates to the manner in which the treasurer shall dispose of city bonds, and the eighth repeals a section of St. 1885, c. 266, which is wholly immaterial so far as the present question is concerned. On the other hand, St. 1892, c. 402, relates principally to the assessment and collection of the expenses incurred in making sewers, omitting any reference to the manner in which contracts are to be made for building them, and leaving that, as it seems to us, to be governed by laws already enacted. Otherwise it would follow that, though the manner in which contracts should be made was carefully guarded in respect to all other departments, in the important matters of sewers the superintendent could do as he saw fit. We see nothing from which it fairly can be inferred that the Legislature intended such a result. A slight argument against it may also be found in the fact that by § 7 two acts are expressly repealed, but no reference is made to St. 1890, c. 418.

We think, therefore, that there was no written authority given by the mayor to the defendant to contract without inviting proposals by advertisement, and that the neglect of the latter to advertise and to take a bond or other security renders the assessments invalid. Whether, if all of the other provisions of the statute had been complied with, the failure to take a bond

would of itself be sufficient to invalidate the assessments, it is not now necessary to decide.

Other objections to the validity of the assessments have been urged by the petitioners, but we find it unnecessary to consider them.                    *Petition granted ; writ to issue.*