S. H. HEARNE v. STANLY COUNTY AND R. N. FURR, Q. E. C. COBLE, AND W. H. CULP, BOARD OF COUNTY COMMISSIONERS OF STANLY COUNTY.

(Filed 21 June, 1924.)

**1. Counties—Municipal Corporations—Change of Site of Courthouse—Statutes—Powers—Government—Agencies.**

There being no provision of law to the contrary, it is not required that a contract for the purchase of a new site for its courthouse should be presently put upon the minutes of the board of county commissioners to be binding, and in an action brought directly against a county or its commissioners involving this question, it may be shown by parol, in proper instances, that the defendants had duly and regularly enacted a proper order and the minutes omitting this, may be corrected to show the fact.

**2. Same—Express or Implied Powers.**

Municipal corporations, as agencies of local government of the State, are subject to almost unlimited legislative control, except when otherwise provided by the organic law, and cannot exercise powers not expressly given by statute or necessarily implied for the proper exercise of the duties expressly imposed upon them.

**3. Same—Anticipated Power—Conditional Purchase of Site—Status Quo.**

C. S., 1297, limits the power of the county commissioners to abandon an existing courthouse and acquire a new site therefor to the methods therein stated, by a unanimous vote of the members of the board of county commissioners at their annual December meeting, and due notice given throughout the county that a final vote would then be taken, so that the proposition, before final action, may be examined into; and where the county commissioners, in anticipation of the change, upon the recommendation of the grand jury, have conditionally purchased the new site, have given their note for the purchase price, upon which payments

have subsequently been made, and this note and deed to the lands so to be acquired have been placed in escrow, compliance with these conditions is a positive statutory requirement, and the seller of the lands acquires no rights otherwise; and upon the failure of such legal requirements both the deed and note are void and unenforceable, leaving the parties *in statu quo.*

### 4. Same—Damages—Actions.

Where the county commissioners and the owner of lands have agreed for the purchase of a new site for its courthouse, conditioned upon the future compliance with the statute relating thereto, which had failed of compliance, and the county had made certain payments upon the purchase price, the county may recover the partial payments it had so made, with the legal interest thereon, subject to deductions as against the interest for its reasonable rental value, while in the possession and control of the county authorities.

### 5. Same—Injunction.

Pending the continuance of an injunction against the county commissioners purchasing a new site for the county courthouse, the action of the commissioners in attempting to validate their former action is unlawful, and can have no effect; nor can proceedings under a later statute to submit the question of the change to the voters have a different effect, when this proposition has been rejected by them.

CIVIL ACTION heard before *Shaw, J.,* and a jury, at February Term, 1924, of STANLY.

The action is to recover on a note purporting to have been executed by Stanly County on 30 August, 1921, signed officially by the chairman of the board and attested or countersigned by the clerk of said board, and with certain payments thereon, in terms as follows:

"Albemarle, N. C., 30 August, 1921. One day after date the County of Stanly, North Carolina, promises to pay to the order of S. H. Hearne the sum of forty-eight thousand seven hundred two and 50 /100 dollars, with interest on the same at the rate of six per cent per annum until paid. This note is given for the purchase price of a lot of land known as the Hearne Grove, bought by the county of Stanly for the purpose of erecting a new courthouse thereon, after legal formalities can be complied with. The deed to this lot of land is this day deposited in the Stanly Bank and Trust Company, to be delivered to the County Commissioners of Stanly County when this note is paid in full.

"Done by order of the Board of County Commissioners of Stanly, day and date above written.

EXHIBIT A.                    R. G. MABRY, *Chairman,*
          *Board of County Commissioners, Stanly County, N. C.*

GEO. P. PALMER,
          *Clerk Ex Officio to the Board."*

Upon the face of said paper is an impression of the seal of the Board of Commissioners of Stanly County, N. C.

On the back of the note are the following credits:

"Received on this note two thousand and no/100 dollars. This 31 October, 1921.

"Received on this note twenty-five hundred and no/100 dollars. This 22 November, 1921."

In reference to the circumstances leading up to and attending the execution of the above note, it appears that prior to said dates, to wit, at November Term, 1917, July Term, 1920, and at April Term, 1921, the grand juries had reported the existent courthouse as unsanitary and inadequate for the transaction of the court and county business, and recommended that a new and up-to-date courthouse be provided for. That, influenced by said action of the grand jury, and in approval of their report, the commissioners bought the property in the town known as the Hearne Grove, a suitable and commodious lot, executed the note in question at the date specified, and plaintiff and wife formally executed to defendants a written deed for the property and deposited same in escrow with the bank cashier to be delivered on payment of the purchase price. The payments were made thereon at the dates named and approved by the commissioners at November meeting, 1921. That at the regular December meeting, 1921, advertisement having been made, it was then unanimously resolved by the commissioners that the courthouse be moved to the Hearne lot, etc. That prior to the last meeting certain taxpayers had instituted an action to restrain the removal of the courthouse and had duly obtained a preliminary restraining order forbidding such action, on facts leading to show that the proposed removal and building of a new courthouse and contracting a debt therefor was illegal, which said order had been duly served on the board and each member, and was alive and in force when said resolution was passed. That in due course and practice of the court, the preliminary order was heard before his Honor, J. L. Webb, holding the court of said county, at February Term, 1922, and the restraining order was continued to the hearing on a finding of facts tending to show the proposed moving the courthouse was illegal, etc. The closing paragraph of said judgment being in terms as follows:

"It is, therefore, ordered and adjudged that the temporary restraining order heretofore granted in this cause by his Honor, J. Bis Ray, is hereby continued in full force and effect until the election be held as provided by the act of the Legislature referred to above, and until the final hearing of this cause at term time, and in the meantime that the defendants, their agents and attorneys are further enjoined and restrained from taking any further steps or action in their attempt to

change the present site of said courthouse and jail, to purchase and pay for the proposed new site, or to issue any bonds or other obligations of the county for the said purpose, or to enter into any contract attempting to bind the county in any way in the premises."

Pending the existence of these inhibitive orders, the General Assembly, on 19 December, 1921, enacted a statute purporting to validate a proposed bond issue for the purpose of carrying out the scheme and plan to remove the courthouse, but providing that the question be referred to a popular vote of the county; and on said vote had, the issue of bonds for the purpose of buying the new site and erecting a courthouse was decisively defeated. The facts in evidence also tended to show that the resolution of the commissioners of August, 1921, looking to the purchase of the Hearne property and the execution of the note, had not been entered on the minutes of the board. There was denial of liability on the part of defendants, chiefly because of failure to enter the resolution for purchase on the minutes of the board. Second, for lack of power in the former board of commissioners to make a binding contract of purchase for the purpose designated, and a counterclaim for the money paid on the note in question, on the ground that same was made without warrant of law. The cause was submitted on the following issues:

Is the defendant Board of Commissioners of Stanly County indebted to plaintiff, and if so, in what amount? Ans. Yes, $48,702.50, with interest on same from 31 August, 1921, subject to payment of $2,000 31 October, 1921, and $2,500 22 November, 1921.

Is the plaintiff indebted to defendant by reason of its counterclaim as alleged, and if so, in what amount? Ans. Nothing.

The court charged the jury that on the facts in evidence, if accepted by them, they should answer the first issue the amount of the note, less credits entered, and the second nothing.

Judgment on the verdict for plaintiff, and defendants excepted and appealed, assigning errors as indicated.

*James A. Lockhart and Parker, Stewart, McRae & Bobbitt for plaintiff.*

*Cansler & Cansler, Brown, Sikes & Turner, and R. L. Smith & Son for defendants.*

HOKE, C. J. In the absence of some provision of law that in order to the validity of their action an order of a board of commissioners, or contract made by them, should be presently put upon the minutes or duly entered thereon, such an entry is not to be regarded as essential, and mere failure of the clerk of the board to keep the minutes properly

is not a fatal defect. Under ordinary circumstances the minutes may be perfected by the proper officer *nunc pro tunc,* and when a contract or authority to make it is not otherwise required to be in writing, and in suits where the commissioners are parties, their action can be proved by parol and the minutes made to show the facts of the matter. *Charlotte v. Alexander,* 173 N. C., 515; *Houser v. Bonsal,* 149 N. C., 51. In *R. R. v. Reid,* 187 N. C., 320, to which we are cited by counsel, there was an effort to make substantial alterations of the minutes of the board of county commissioners in a suit between third parties, and holding that this could not be done except on application to the board to correct their minutes or in a suit where the said board, being parties, were given opportunity to be heard and would be bound by the decree, the cause was remanded to the end that the commissioners be made parties. Here, however, the suit is against the commissioners, and the court has full jurisdiction to award relief and direct an amendment of the minutes so as to show what their action truly was. The court below, therefore, correctly ruled that parol evidence of the resolution of the commissioners touching this matter should be received and appellant's first exception is disallowed. As to defendant's second objection, that the board of commissioners at the time was without power to make an absolute contract of purchase, it is accepted law with us that county governments, as a rule, are merely agencies of the State, constituted for the convenience of local administration in designated portions of the State's territory, and in the exercise of ordinary governmental functions, and unless protected by constitutional provisions, they are subject to almost unlimited legislative control. *Trustees v. Webb,* 155 N. C., 379, and authorities cited. Our decisions are to the effect, further, that boards of county commissioners are possessed only with those powers which have been expressly conferred or which are necessarily implied for the proper exercise of the duties imposed upon them. *Fidelity Co. v. Fleming,* 132 N. C., 332; *Vaughn v. Comrs.,* 118 N. C., 636; *S. v. Webber,* 107 N. C., 962; C. S., 1290. In *Fidelity Co. v. Fleming, supra, Associate Justice Walker,* for the Court, said: "The board of commissioners in the several counties possess only those powers which have been prescribed by statute and those necessarily implied by law, and no others. This is the general rule, and it has also been expressly declared by statute to be the rule which ascertains the true scope and limit of their power and authority." And in *Vaughn v. Comrs., supra,* "Corporations which exercise delegated governmental authority, such as counties, must be confined to a strict construction of the statutes granting their powers. There is nothing in the nature of their duties to give rise to the implication that the State intends to clothe them with any other power than that expressly conferred, and

4—188

the further right to do what is necessary to the complete exercise of the express powers." Considering the record in view of these recognized positions, the statute conferring powers chiefly involved in this inquiry, and existent at the time of the alleged purchase, is C. S., 1297, subsection 10, subsection 16. By the former it is provided that the board of commissioners shall have power "To remove or designate a new site for any county building, but the site of any county building already located shall not be changed unless by a unanimous vote of the members of the board at the regular December meeting, and unless upon notice of the proposed change, specifying the new site. Such notice shall be published in a newspaper printed in the county, if there is one, and posted in one or more public places in every township in the county for three months next immediately preceding the annual meeting at which the final vote on the proposed change is to be taken. Such new site shall not be more than one mile distant from the old, except upon the special approval of the General Assembly." And in subsection 16: "To purchase real property necessary for any public county buildings, and for the support of the poor, and to determine the site thereof, where it has not already been located; and to purchase land at any execution sale, when it is deemed expedient to do so, to secure a debt due the county. The deed shall be made to the county, and the board may, in its discretion, sell any lands so purchased." From a perusal of these legislative provisions it clearly appears that, while a board of county commissioners, as a general rule, are empowered to buy such real property as is necessary for any public county building, when the purchase involves and contemplates the removal from the site of a county building existent and already located, this can only be done by a unanimous vote of all the members of the board at their annual December meeting, and after due notice given throughout the county that a final vote on the proposition would then be taken. This power to change the site of an existent public building is required to be exercised at a fixed time and after due notice, to the end that both the desirability and legality of the proposition should be fully examined into and determined, and operates as a limitation on the power of the commissioners to make an absolute purchase for the designated purpose. It could not be fairly said that the power to purchase property for such a purpose was a necessary county expenditure or investment, when the power to make it might never come into existence. Being a body of restricted authority as stated, they could only bargain in the tentative, that is, on condition that the power to carry out the expressed purpose should be acquired in due course of law. The parties were evidently aware of these limitations and made their contract in reference to it, for they inserted on the face of the note the following: "This note is given for

the purchase price of the land known as the Hearne Grove, bought by the county of Stanly for the purpose of erecting a new courthouse thereon, after legal formalities can be complied with." And furthermore, the deed was not delivered outright but deposited in escrow, and it may be a permissible view that this contract on its face is a conditional one; but however this may be, the limitation on the power of the commissioners appearing in public statute, appertaining to the subject, enters into and controls any and all contracts coming under its provisions and constitutes the same but a tentative bargain, valid only on condition that the power to use the lot for the designated purpose should be thereafter acquired in accordance with law.

Such contemplated powers never having been lawfully acquired, the obligation is thereby avoided and the parties thereto are released. *House v. Parker,* 181 N. C., 40; *White v. Kincaid,* 149 N. C., 415; *O'Kelly v. Williams,* 84 N. C., 281; and the position as stated is clearly approved in principle in *McPeeters v. Blankenship,* 123 N. C., 651; *Bridge Co. v. Comrs.,* 111 N. C., 317; *Cotton Mills v. Comrs.,* 108 N. C., 678; *Bennett v. Norton,* 171 Pa. St., 221; *Nickerson v. San Bernardino,* 179 Cal., 518; *Winn v. Shaw,* 87 Cal., 631; *Chamber of Commerce v. Essex County* (N. J.), 114 Atl., 426. Plaintiff is evidently conscious of the strength of this objection, and cites in answer thereto the action of the board at their December meeting, ordering a removal of the courthouse to the designated site, but the order was in violation of an existent injunction duly served, and, being therefore unlawful, cannot avail the plaintiff. And it is no answer to this position that the injunction may have been erroneously issued. This does not at all appear and, as a matter of fact, it was continued to the hearing, and so far as the record discloses is still existent. But if it were otherwise, where a court has full jurisdiction of the cause, the questions presented therein and the parties, an erroneous injunction binds, unless or until it is vacated or modified by valid orders in the cause. The act of the commissioners, therefore, in violation of an injunction then alive and in force, was, as stated, an unlawful act, and on the facts of this record cannot be allowed to affect the rights of the parties or those who take and hold with notice. *Farnsworth v. Fowler,* 1 Swain, 1 (Tenn.); *Ward v. Billups,* 76 Texas, 466; *Collins v. Frasier et al.,* 27 Ind., 477; *Southard v. Latham,* 138 Pac., 205; Beach on Injunctions, sec. 281; 14 R. C. L., pp. 170-171, note Injunctions, sec. 170-171; 22 Cyc., pp. 1017-1018. In addition, before any lawful orders were made, the Legislature, taking up the matter, passed an act, in effect, submitting the question of removing the courthouse, and incurring liability therefor, to a popular vote, and the measure was therein disapproved, and the contract, as stated, being only on condition, the power to perfect it and

carry out the measure was thereby authoritatively withdrawn, and the parties have no further right to proceed therein. *Spitzer v. Comrs., ante,* 30, citing *Jones v. Comrs.,* 137 N. C., 579, and other cases. Applying these principles, and on the facts as they now appear, his Honor should have charged the jury that if these facts were accepted they should answer the first issue "Nothing," for the contract of purchase, as stated, being only on condition that a lawful order should be made for the removal of the courthouse, and no such order having ever been obtained, and the right to make it authoritatively withdrawn, the contract is thereby avoided, and the parties should be placed *in statu quo.* This, in our opinion, being the correct position on the first issue, defendants are entitled to a counterclaim for the money paid on the contract, with interest from date of payment; subject, however, to a deduction against interest for a fair rental for the property if the same has been turned over to defendants. These payments having been made prior to the time when the commissioners were to act in the matter, or were allowed to do so, same were without warrant of law, and suit therefor may be maintained by the proper officials of the county, whether they be the same or a succeeding board. *Brown v. R. R., post,* 52; *Burgin v. Smith,* 151 N. C., 561. For the reasons stated, defendants are entitled to a new trial of the cause, and it is so ordered.

New trial.