## GEORGE W. CONDON CO. v. BOARD OF COUNTY COM'RS. OF NATRONA COUNTY

(No. 2158; June 11, 1940; 103 Pac. (2d) 401)

For the plaintiff in error, there was a brief and oral argument by *William B. Cobb* of Casper.

For the defendant in error, there was a brief and an oral argument by *Vincent Mulvaney* of Casper.

BLUME, Justice.

This is an action brought by the George W. Condon Company, a Corporation, against the Board of County Commissioners of Natrona County in this state, to recover upon a verbal contract for the construction of a road or highway in Natrona County. It was alleged in the petition that the road to be built was near the Alcova Diversion Dam near the town of Alcova; that it was agreed that the defendant would pay plaintiff the reasonable rental value of the equipment and labor necessarily used in said construction work, and that payment would be made when the work would be completed; that plaintiff completed the work according to the contract and that the reasonable value of the work is the sum of $3708.91; that an itemized statement was duly filed with the Board of County Commissioners of the county and that the Board has neglected and refused to pay it. After issues joined the court found in favor of the defendant, from which the plaintiff has appealed to this court.

It appears from the testimony in this case that about February 20, 1937, Harold H. Hudkins, superintendent for plaintiff, had a meeting with E. J. Reid, D. C. McClellan, and Henry C. Posey, being all the members of the Board of Commissioners of Natrona County, in which the road in question was discussed and a proposition was made by Mr. Hudkins to the Board to construct the road in question for the county at cost. All the members of the Board went to look over the ground where the road was intended to be constructed. They

were all apparently in favor of it, but no final action was taken at that time. A few days thereafter, namely, on February 27, 1937, Mr. Hudkins, on behalf of the George W. Condon Company, addressed a letter to the Board of Commissioners of Natrona County, stating in writing that the Condon Company would construct the contemplated road at cost price, mentioning the fact that the site of the road had been changed to some extent by the United States engineers but that the change was for the better. The cost price was estimated at $2068. A few days subsequently Mr. Hudkins met at least two of the members of the Board of Commissioners, namely, Mr. Reid and Mr. Posey, in the office of Mr. Bashor, representative of the United States Reclamation Service, and the members of the Board present, or at least Mr. Reid, the chairman of the Board, told Mr. Hudkins to go ahead with the work. The company did so, and constructed about 2000 feet of road. It was contemplated that the road should go over the Alcova Dam, but about 200 feet of the road was not fully completed by the Condon Company; a considerable amount of blasting of rock was required, which was done, apparently, by the main contractor constructing the Alcova Dam. Mr. Hudkins testified that the Condon Company completed all but a little of the road, which was contemplated under the verbal contract heretofore mentioned. Whether the road was fully completed or not is not clear. Some of the evidence indicates that Callahan & Company, the main contractor for the construction of the Alcova Dam, fully completed it. The county furnished, it seems, a culvert in connection with the construction of the road. The Board also employed one H. H. Price to check the amount of time spent by men and equipment, so as to determine the cost price, and his bill was paid by the county. He was regularly employed as an inspector of highway work. He kept time of the equipment and labor in connection with the

work on the road in question for the period of about ten days, and, on instruction from Mr. Posey, quit when the blasting of the rock commenced. Mr. Reid and Mr. Posey went to inspect the work on the road several times during the construction. There is a dispute in the testimony as to whether or not the Condon Company constructed the road for its own benefit. Most of the testimony indicates that it used the road, but constructed it of a greater width than would have been necessary for its own work. As finally constructed, the road was approximately thirty-five feet wide, in fairly good condition, and was used to a considerable extent by various people, particularly tourists who used it for the purpose of inspecting the Alcova Dam Project. The Condon Company presented its bill to the County for the sum of $3708.91, representing the cost price of the work. The bill was never acted upon. Mr. Posey, who was in charge of highways for and on behalf of the Board of Commissioners, stated at a meeting of the Board that he had authorized the expenditure on the road of $2068. Mr. McClellan had previously stated that he would not be interested in the road, if it cost more than that. It is agreed that the Board as such never entered into a contract with the plaintiff in this case for the construction of the road.

The plaintiff company was not a mere volunteer. It was authorized to do the work by at least two, if not all, the members of the Board of Commissioners. However, the authorities are agreed that the individual members of the board cannot, as individuals, bind the county. The board must act as a body in order to validly act for and obligate the county by an express contract. Grand Island etc. R. Co. v. Baker, Treasurer, 6 Wyo. 369, 403, 404, 45 Pac. 494; 15 C. J. 540, 553; 7 R. C. L. 941; 14 Am. Jur. 204. It is contended, however, that the county is liable in this case upon two theories, namely, first, upon the theory of ratification

of the contract, and, second, upon the theory of an implied or quasi-contract by reason of benefits received and accepted. We shall consider these contentions in their order.

Ratification may be express or implied. 15 C. J. 554; 44 C. J. 122. It relates back to and is in effect the equivalent of previous authorization. 44 C. J. 122. It has been stated that "ratification of an unwarranted exercise of authority by an agent of a municipal body requires, if strictly applied, that the officer vested with the power approve the action of the subordinate, but this may be either express or implied from the acts, words or conduct of the body empowered to act which reasonably shows the intention." 47 Harvard Law Review 1165; Green v. Cape May, 41 N. J. Law 45; New Jersey Car Spring Rubber Co. v. Jersey City, 64 N. J. Law 544, 46 Atl. 649. McQuillan, Municipal Corporations (2nd ed.), Sec. 1360, states that the ratification by a city may consist of an ordinance, but need not necessarily be so, and in Section 1357 the author states: "Ratification should be by express consent or by act or conduct of the principal inconsistent with any other supposition than that he intended to adopt and own the act done in his name." In 20 C. J. 608, it is stated that ratification "must be of such nature as to be utterly inconsistent with any other course of conduct." It will not be inferred from equivocal circumstances. 14a C. J. 382. And it is necessary that the officers ratifying should be fully advised of all the facts connected with the act claimed to be ratified. McQuillan, supra, Sec. 1361. Many of the cases on the subject deal with ratification by acceptance and use of property, that is to say, by reason of benefits received and retained. The subject of benefits will be considered later in this opinion. At present, we shall consider only the other acts on the part of the county or the board. The testimony shows that the county furnished a culvert, which be-

came a part of the road. But it does not appear that the board or all the individual members thereof had full knowledge of this fact, so that ratification cannot be inferred from that fact. It further appears that Price, who was employed as a timekeeper to check the amount of time put in by men, teams and machinery in constructing the road, was paid by the county, and it is claimed that such payment constitutes a ratification of the contract. In Hickman County v. Bridge Co., 66 F. (2d) 174, it appears that the county board, by resolution, appointed a committee to receive bids and let a contract for the construction of bridges. The committee duly advertised for competitive bids and let contracts pursuant to the authority granted by the resolution. It was held that the board had no power to delegate the authority to a committee, but it was contended, by paying the cost of advertising above mentioned, it ratified the contract. The court held to the contrary, and stated: "Another incident said to amount to ratification was the payment for the committee's bills for advertising for bids. This act amounts to nothing more than a ratification of the committee's ministerial act of advertising. Having authorized that act, the county was bound to pay the bill. And besides, the court (board) could very well agree to pay the bill for advertising for bids without ratifying the acceptance of a bid by the committee." It appears in the case at bar that Price was a regular employee of the county to inspect roads. He spent ten days or two weeks in checking the time above mentioned. It is altogether reasonable that the board would want to pay him his salary or wages for the full month even though he spent part of that time on unauthorized work. The payment is so equivocal a circumstance that it cannot be considered consistent only with the intention to ratify the contract here in question.

We might mention, incidentally, that section 95-201,

Rev. St. 1931, provides that if the state or a subdivision thereof enters into a contract for a public improvement costing more than $500, the contractor must furnish a bond for the faithful performance of the contract and that he will pay all materialmen and laborers in connection therewith. Similar statutes have been held to be mandatory, some of the cases holding that no recovery may be had on the contract, although a recovery on a quantum meruit or quantum valebat is not forbidden. 44 C. J. 351; McQuillan, supra, Sec. 1282; Burt v. Road Improvement District, 159 Ark. 275, 253 S. W. 1, and cases cited; Southern Surety Co. v. Fort Smith District, 17 F. (2d) 63; Boditch v. Superintendent, etc., 168 Mass. 239, 46 N. E. 1026; Bay State Street Railway Co. v. Woburn, 232 Mass. 201, 122 N. E. 268; Cowan v. City of Merrill, 202 Wisc. 614, 233 N. W. 561; Kelley v. Torrington, 81 Conn. 615, 71 Atl. 939; Barker v. Construction Co., 20 Ky. L. 796, 47 S. W. 608. It does not appear that the plaintiff in this case furnished a bond. It is not necessary, however, in this case, to determine whether the contract in this case was invalid for that reason. The point has not been argued, but we deemed it best to refer to the statute, lest it be thought that we had overlooked it.

There are numerous decisions on the point as to whether or not recovery can be had upon an implied contract of a municipality. A note collecting many of them may be found in 84 A. L. R. 936, et seq., continued in 110 A. L. R. 153 et seq. In Kentucky, Ohio, and Missouri, such contracts, seemingly, are not recognized. Note, 84 A. L. R. 949 to 954; Carter v. Reynolds County, 315 Mo. 1233, 288 S. W. 48. The great weight of authority, however, seems to be to the contrary. Thus it is stated in note, 84 A. L. R. 477, that:

"The rule is well settled in most jurisdictions that a municipality or other political subdivision may become obligated upon implied contract to pay the reasonable

value of benefits accepted or appropriated by it as to which it has the general power to contract."

In note, 84 A. L. R. 973, it is stated as follows:

"It is a general rule that, even though there was no express contract, nor any formal contract, a municipality or other governmental body is liable upon an implied contract for any property, or benefits received or appropriated by it, under such circumstances as to lead to the inference that payment was intended by the parties, or such as for, in justice and equity, compensation should be made for benefits voluntarily accepted, provided such property or benefits would be a proper subject of an express contract and within the contractual powers of such municipal corporation."

In McQuillan, supra, Sec. 1364, Vol. 3, p. 975, the author states:

"Thus if the municipality has power to contract therefor by express contract, and the contract is not against public policy, and there are no statutory or charter provisions limiting the mode of execution of a like express contract, it will be liable upon an implied contract where it has received benefits, either in the entire absence of any contract or where the express contract is invalid because of some irregularity."

See also Dillon, Municipal Corporations, (5th ed.) Sec. 793.

In 7 R. C. L. 946, it is stated:

"It is a general principle of almost universal application that whenever a county has power originally to do a particular thing, it also has the power to ratify and make valid an attempted effort to do such thing, although the same may have been done defectively, informally, and even fraudulently, in the first instance. Upon the strength of this principle municipal corporations have been estopped from denying their liability to pay for benefits received, in some cases where there was no contract at all, and even in cases where there was an absence of power to make the contract. Where a county receives and retains substantial benefits under

a contract which it was authorized to make, but which was void because irregularly executed, it is liable in an action brought to recover the reasonable value of the benefits received. Likewise a county employing one to do certain work, and accepting it, going into possession, and using it after it is finished, is liable for the reasonable value of the work, though not performed strictly according to the contract."

Similar in effect is 14 Am. Jur. 212; 15 C. J. 559. The decisions are not altogether harmonious, as pointed out in an article in 47 Harvard Law Review, 1143 et seq. Part of the disharmony is due to the fact that some courts have held certain statutory provisions to be mandatory, while other courts have held them to be directory. Thus, we held in Tobin v. Town Council of Sundance, 45 Wyo. 219, 17 P. (2d) 666, 84 A. L. R. 902, that, as held by most of the courts, a statutory provision requiring a public contract to be let by competitive bidding is mandatory, and recovery cannot be had either under the contract which is in violation thereof or upon an implied contract. We have no statutory provision applicable to counties similar to those mentioned in the Tobin case, unless it be Section 52-401, Rev. St. 1931, which provides that if a bridge is to be constructed by a county, at a cost exceeding $100, the contract for such construction shall be let under competitive bidding to the lowest bidder. The statute then proceeds to state:

"And the commissioners are hereby authorized to contract for such necessary improvements upon the public roads and highways in the same manner as provided in the case of bridges, provided that, when any bridge is to be built, or other improvement made as provided in this section, the county commissioners shall award such contract in such manner as to them shall appear just and equitable for the county."

The section was first enacted in 1869, except that competitive bids were required if the estimated cost

was over $50.00. Section 17, c. 26, Laws 1869. We find no other provision in the laws of that time concerning the construction or repair of roads by the county, other than as mentioned above. Apparently the state at that time depended to some extent on toll-roads. Chapter 8, Laws of 1869. By Chapter 89, Session Laws of 1882, road overseers were given control of the construction and repair of roads and bridges in the county, and their compensation was fixed. A more comprehensive law was enacted in 1886. The road supervisor was required to open and keep in repair all public roads. A special road tax was levied, with the privilege of working it out under the supervision of the road supervisor. The latter was authorized to purchase plows, scrapers and other implements to assist him in the performance of his duties. Section 17 of the Session Laws of 1869 was re-enacted. Chapter 99, Sec. 16 et seq., Session Laws 1886. With some slight changes, these laws were kept in force and effect until most of them, in so far as relating to the road supervisor, were repealed by Chapter 17, Session Laws of 1931. At all times the provisions of section 17, Ch. 26 of the Laws of 1869 were re-enacted or kept in force, except that in 1895 the law was re-enacted as it reads at the present time. The statute, in so far as it relates to road-improvements other than bridges, is not mandatory in form. The commissioners are *authorized* to enter into contracts for such improvements after competitive bidding. Still, that is the only provision specifically enabling them to enter into such contracts, and since the authority of county commissioners is fixed and limited by statute, it may be a fair question as to whether or not they are limited in making such contracts to the specific manner pointed out, and that, accordingly, such contracts should be governed by the rule laid down in the Tobin case. The point has not

been argued herein, and it is not necessary to decide it. But we thought best to make reference thereto.

It may be noted that the rule of liability on an implied contract is based on benefits received and retained. In each of the cases cited to us by counsel for the appellant, the decision is based on that ground. If no benefits have been received and retained, no liability arises on an implied contract. Chicago v. Beck L. Co., 93 Ill. App. 70; 47. Harvard Law Rev. 102; Dillon, supra, Sec. 794, states that if property instead of money has been received, it must have been used by the municipality, or be in its control. The author adds, relying on Argenti v. San Francisco, 16 Cal. 255, that "with reference to services rendered, the case is different. Their acceptance must be evidenced by ordinance or express corporate action to that effect." But there are cases to the contrary. See Harris County v. Nevelle (Tex. Civ. App.) 84 S. W. (2d) 834 and cases cited. It would seem to be clear, however, that, in a case like that at bar, the county cannot be said to have received any benefit from the road in question, unless it can be said that it, through its board, had the right to take charge and control thereof. But it had no such right, unless it was a duly established county road. The board had no authority to take charge and control of a private road on behalf of the county. Its authority is limited by the statutes. So far as relevant here, the statute, Section 52-205, Rev. St. 1931, provides that "all county roads shall be under the supervision, management and control of the board of county commissioners of the county wherein such roads are located, and no county road shall hereafter be established, altered or vacated in any county in this state except by the authority of the county commissioners of the county wherein such road is located, except as otherwise provided by law." Sections 29-301 and 30-605, sub. 7, make provisions to carry the power here granted into effect. But the

power is limited to *county roads*. To be such, a road must be established by the board. Public money may not be expended except for a public purpose. Hence the county, through its board, had no authority to expend any money on the road in question, and therefore had no power to contract, expressly or impliedly, to expend any money thereon, unless it can be said to be a duly established road. In Graham County v. Board, (Ariz.) 71 P. (2d) 1014, 1021, the court said: "It is hardly necessary to state that neither the county nor the state may expend money upon what, as a matter of law, is merely a private right of way and not a public highway." In Bigler v. Crowan, (Wisc.) 73 N. W. 771, it was held that a contract for work on a highway not legally established is illegal. That was in a case where the county attempted to establish a highway but the proceedings were defective. In Jefferson County v. Fiscal Court, 269 Ky. 535, 108 S. W. (2d) 181, it was held that public money may not be used in keeping in repair streets not taken over by the county as a part of its system of roads. In Potter v. Madden, 165 Ky. 266, 176 S. W. 98, it was held that a road must be established by judgment before it can be actually constructed and opened. See also 29 C. J. 589. We are dealing in this case, accordingly, not only with work done, but also with the question of whether or not such work was done on a road which has become a county road. That is the greatest difficulty which confronts the plaintiff in this case. And no authorities have been cited that under circumstances such as are presented here, a road may be considered to be a county road.

The board never made a formal order to establish the road in question as a county road. The legislature of this state gave the county commissioners until January 1st, 1924, to make a record of all highways in the county, and provided that "no other roads shall be highways unless and until lawfully established as such

by· official authority." That indicates a policy that roads should be shown on the records. Other sections of the statute provide for a record or at least a description, filed in the office of the county clerk, of public roads. Sections 52-214, 216, 226. It has been held in a number of cases that a statute which provides that the county clerk should keep a record of the proceedings of the board of commissioners is directory, at least in so far that a contract made by the board may be proved by parol. 15 C. J. 468; State ex rel. v. Bank, 77 Mont. 98, 251 Pac. 548; Hearne v. Stanley County, 188 N. C. · 45; 123 S. E.· 641; Chicago etc. R. Co. v. Stafford County, 36 Kans. 121, 12 Pac. 593; Landa v. State (Tex. Civ. App.) 131 S. W. (2d) 323; Dunn v. Dixon County, 102 Nebr. 1, 165 N. W. 959 and cases cited. The establishment of a county road, however, cannot be said to be merely administrative. It appears to be legislative (24 C. J. 395), or in some instances at least quasi judicial in character. So that it may be questioned as to whether the rule just mentioned should be applied in such a case. If, however, an order need not be necessarily placed of record (see Elliott, supra, Sec. 446), and parol evidence to show the order is admissible, the basis for such evidence should at least exist; in other words, the order actually made should show the location, description, and width of the road. If we may go further, and admit, for the purposes of this case, that a county road may be established impliedly, then are the facts shown herein sufficient for that purpose? That might possibly be said to be true, if the board had taken charge and control of the road. See Elliott, supra, Section 167 et seq., dealing with implied acceptance of a dedicated road. But the board did not do so. On the contrary, it refused to take control· of it. That people traveled it does not show such control. They may have been trespassers. The·county can be bound only through its board. The fact that the road was

constructed under the invalid agreement above mentioned is not sufficient. That was held in Lucerne Township v. Fayette County, 330 Pa. 247, 199 Atl. 327. In that case it appears that, under a special statute, a county is authorized to construct or improve a road jointly with a township. But the agreement to that effect must be in writing. On the ground of failure in that respect, the agreement of the board was held invalid. It was contended, however, that the county should be held liable on an implied contract for benefits received and retained, but the court said, holding that no benefits could be said to have been received or accepted, as follows:

"Common honesty requires that a municipality or other governmental agency should not be allowed, any more than a private individual, wholly to repudiate the obligation of which it has voluntarily appropriated the benefits. And in such cases if the municipality does not restore the property which it has received, an implied obligation to make compensatory payment for it arises. * * * This principle, however, has no application in the present case for several reasons: First, the roads were built within the township itself, and can scarcely be said to constitute property received by the county; second, the doctrine does not extend to benefits which by their very nature cannot be surrendered and the retention of which is therefore not voluntary, as, for example, paved highways or improvements upon buildings."

See also State ex rel. v. McCabe, 74 Wis. 481, 484, 43 N. W. 322; Cunningham v. Hendricks, 89 Wis. 632, 62 N. W. 410; Tom v. Neuville, 174 Wis. 347, 182 N. W. 471.

Section 52-206, Rev. St. 1931, provides that "all county roads shall be not less than sixty nor more than one hundred feet in width, unless the board of county commissioners, upon the prayer of the petitioners for the same, determine that a county road be established with a less width." It has been held that a similar stat-

ute has application to such roads as are laid out by formal act of public authorities and not those created by dedication. Black v. Southern Pacific Co. (Cal. App.) 12 P. (2d) 981, 987. Peculiar obstacles existing, preventing the road from being of the required width, may be of such nature that non-compliance with the statute should not be held to be fatal. See Sanford v. Board, 5 Nebr. Unoff. 364, 98 N. W. 822. Generally speaking, the board must comply with the statute. Elliott on Roads and Streets, supra, Sec. 436, states that the matter of width is one of considerable importance. "It is essential that the road should be of the width required." See also Sisson v. Carithers, 35 Ind. App. 161, 72 N. E. 267, 73 N. E. 924; Stauffenberg v. Makeever, 72 Ind. App. 80, 125 N. E. 584; Bryan v. McKinney (Tex. Civ. App.) 279 S. W. 475; Hill v. Taylor County (Tex. Civ. App.) 294 S. W. 868; In re Adolph, 102 App. Div. 371, 92 N. Y. S. 841, 186 N. Y. 547, 79 N. E. 1100. Of course, if a contract is lawfully let to construct a road, the mere fact that a road may not be of the statutory width should not, probably, prevent the contractor from recovering. We have no such question before us. We think, however, that the question of width should have a bearing on the point as to whether or not the road in question has been established impliedly. We cannot presume that the board intended to establish a road of less width than that specified by the statute. The presumption should be to the contrary. So that, it would seem, the most that could be said under the facts in this case is that the board intended to establish the road in the future, making the constructed road of 35 feet a part thereof. But that step has not been taken, so that the road cannot as yet be held to have been established. We do not go so far as to hold that a party who, in good faith, and pursuant to authority, furnishes material or labor for a road, should not be able to recover therefor

merely because the road may not have been duly estab-
lished, if he, in good faith, is ignorant of that fact. In
the case at bar, the plaintiff had full knowledge. The
writer adds, that his first impression was that the
plaintiff should be able to recover $2068, thinking that
a rule or principle of law would warrant recovery for
that amount. He finds that his first impression was
wrong, and based on premises which were found to be
of sand.

The judgment of the trial court must be affirmed,
and it is so ordered.

*Affirmed.*

RINER, Ch. J., and KIMBALL, J., concur.