IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-104

No. 488PA20

Filed 19 August 2022

MARY COOPER FALLS WING, et al.

v.

GOLDMAN SACHS TRUST COMPANY, N.A., et al.

———————————————————

RALPH L. FALLS III, et al.

v.

GOLDMAN SACHS TRUST COMPANY, N.A., et al.


On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 274 N.C. App. 144 (2020), reversing an order entered on 20 May 2019 by Judge Edwin G. Wilson Jr. in Superior Court, Wake County, and remanding the case to the trial court. Heard in the Supreme Court on 22 March 2022.

*Womble Bond Dickinson (US) LLP, by Johnny M. Loper, Elizabeth K. Arias, and Jesse A. Schaefer, for plaintiff-appellee Mary Cooper Falls Wing; and James, McElroy & Diehl, P.A., by Fred B. Monroe, for plaintiff-appellees Ralph L. Falls III; M.E.F., by her next friend and parent, Ralph L. Falls III; L.C.F., by her next friend and parent, Ralph L. Falls III; and J.B.F., by his next friend and parent, Ralph L. Falls III.*

*J. Mitchell Armbruster, James K. Dorsett III, and Eva Gullick Frongello for defendant-appellant Goldman Sachs Trust Company, N.A.*

*Alan W. Duncan, Allison O. Mullins, and Hillary M. Kies for defendant-appellant Dianne C. Sellers; and Leslie C. Packer, Alex J. Hagan, and Michelle A. Liguori for defendant-appellants Louise Falls Cone, Toby Cone, Gillian Falls Cone, and Katherine Lenox Cone.*

*John V. Orth, pro se, amicus curiae.*

BARRINGER, Justice.

In this matter, we address the extent of a trustee's duties and powers concerning litigation challenging trust amendments. We ultimately hold that the trustee in this case had the *power* to defend the litigation. We need not and cannot resolve the separate issue of whether the trustee also had a *duty* to defend the litigation in this matter. A trustee's duty to defend is more limited than its powers. It is confined to actions which may result in a loss to the trust estate. We also hold that the Court of Appeals erred by applying N.C.G.S. § 31-36, a statute applicable to will caveats, to this trust proceeding. Although both wills and trusts may be used to dispose of property at death, a trust is not a will. The law applicable to each is often different. Given our holding on these issues and others, we vacate in part and reverse in part the Court of Appeals' decision.

## I.   Background

In May 2018, Mary Cooper Falls Wing (Wing) and Ralph L. Falls III (Falls) (collectively, plaintiffs) commenced litigation to set aside certain amendments to the Ralph Falls Revocable Declaration of Trust (Trust) created by their father Ralph L. Falls Jr. (decedent). Through the challenged amendments, decedent removed Wing and Falls as beneficiaries of the Trust. In his last amendment to the Trust (Fifth

Amendment), decedent named as the Trust's beneficiaries Dianne C. Sellers (Sellers), Louise Falls Cone, Toby Cone, Gillian Falls Cone, and Katharine Lenox Cone[1] (collectively, defendant beneficiaries). Decedent married Sellers in 2014, and Louise Falls Cone is decedent's daughter. Louise is married to Toby, and Gillian and Katharine are Louise and Toby's children.

¶ 3     In their complaints, Wing and Falls both allege that decedent lacked the capacity to amend the Trust and that Sellers, Louise Falls Cone, and others unduly influenced decedent. They also both seek relief, whether injunctive or by judgment, against the trustee, Goldman Sachs Trust Co., N.A. (Goldman Sachs), for distributions to defendant beneficiaries, which they claim were invalid given that there were pending judicial proceedings challenging the Trust amendments' validity. Wing and Falls named defendant beneficiaries and Goldman Sachs as defendants in their respective actions.

¶ 4     After commencing this litigation, Wing filed a "Motion to Freeze Administration of Revocable Trust Until Beneficiaries Are Determined." In each of the proceedings, defendant beneficiaries then filed a "Joint Motion to Pay Defense Costs," seeking an "order directing Goldman Sachs, as trustee, to pay [defendant

---

[1] We have used the spelling of Katharine as reflected in the complaint but note that the Fifth Amendment uses a different spelling.

beneficiaries] the costs of defending the trust in this case." Defendant beneficiaries

stated in their motions that:

> 13. Goldman Sachs prefers that [defendant beneficiaries]—the beneficiaries of the revocable trust—be the parties that defend the trust, rather than Goldman Sachs. Thus, [defendant] beneficiaries are and have been in the role of defending the trust. In light of Ms. Wing's motion to freeze, it would be appropriate for the [trial c]ourt to enter an order denying that request and to also enter an order allowing Goldman Sachs to make distributions from the trust for the costs of defending the trust so the trust can be defended.

> 14. To ensure that the duties of the trustee are discharged, [defendant beneficiaries] seek distributions from the trust administered by Goldman Sachs sufficient to cover the costs and expenses of defending the trust in this litigation.

> WHEREFORE, [defendant beneficiaries] respectfully request that the [trial c]ourt enter an order directing Goldman Sachs as trustee to make regular reimbursements to [defendant beneficiaries] for the life of this lawsuit sufficient to cover the costs and expenses of defending the trust.

Wing then filed an "Amended Motion to Freeze Administration of Revocable

Trust Until Beneficiaries Are Determined or in the Alternative, to Pay Defense Costs

for All Purported Beneficiaries."

Goldman Sachs, as trustee, filed a brief supporting defendant beneficiaries'

motions to pay and opposing Wing's motion to freeze. In its brief, Goldman Sachs

argued that because Goldman Sachs, as trustee, had "a duty to defend the trust, the

[trial c]ourt should allow [Goldman Sachs] to pay the legal expenses of [defendant b]eneficiaries which [Goldman Sachs] deems are being incurred to defend the Trust." Goldman Sachs "request[ed] the [trial c]ourt's instructions and guidance as to the future payment of legal fees to [defendant b]eneficiaries' counsel so that their counsel can continue to appropriately carry out its duty to defend the Trust."

¶ 7    After a hearing on 20 March 2019 and the tendering of competing draft orders, the trial court, using one of defendant beneficiaries' proposed orders, granted the motions to pay and ordered that:

> Defendant Goldman Sachs, as Trustee of the Revocable Trust . . . shall, in the proper exercise of its business judgment, make distributions to [defendant beneficiaries] for payment for legal fees incurred by them in the above-captioned cases with respect to their defense of this matter. This Order is without prejudice to any party's other remaining claims and defenses in these matters.

¶ 8    Plaintiffs appealed the trial court's order granting the motions to pay (Pay Order).

¶ 9    On appeal, the Court of Appeals concluded that plaintiffs had shown that the appealed interlocutory order, the Pay Order, affected "substantial rights." *Wing v. Goldman Sachs Tr. Co.*, 274 N.C. App. 144, 153 (2020). Thus, the Court of Appeals allowed appellate review pursuant to N.C.G.S. § 1-277(a). *Id.* at 147, 153.

¶ 10    The Court of Appeals next decided that a subsection of a statute addressing will caveats, N.C.G.S. § 31-36(a)(1), "provide[d] the framework for the case." *Id.* at

153. Then, after concluding that "the trustee's duty of and liability for distribution to disputed beneficiaries during pending litigation [was] an issue of first impression in North Carolina," the Court of Appeals analyzed two decisions from the California Courts of Appeal. *Id.* at 154–55. Finding these decisions persuasive, the Court of Appeals held that:

> The Trust does not need defending in the case before us because there is no contest to the validity of the Trust. This dispute is between the rightful beneficiaries, and the Trust is not in peril. Goldman Sachs has breached their duty of neutrality by deciding who the rightful beneficiaries are before pending litigation has resolved that issue.
>
> . . . .
>
> . . . The trustee is not required to pay attorney fees or legal costs unless the *res* of the Trust is in peril.

*Id.* at 155–56.

¶ 11     The Court of Appeals concluded that "[t]he trial court erred by not freezing and by ordering distributions from the Trust to some putative beneficiaries but not others during pending litigation[,]" and it reversed the Pay Order and remanded to the trial court for entry of an order allowing the motion to freeze. *Id.* at 156.

¶ 12     Defendant beneficiaries and Goldman Sachs petitioned this Court for discretionary review pursuant to N.C.G.S. § 7A-31. This Court allowed both petitions.

## II. Standard of Review

"Review by th[is] . . . Court after a determination by the Court of Appeals, whether by appeal of right or by discretionary review, is to determine whether there is error of law in the decision of the Court of Appeals." N.C. R. App. P. 16(a); *see, e.g.*, *State v. Melton*, 371 N.C. 750, 756 (2018).

## III. Appellate Jurisdiction

As defendant beneficiaries challenge the Court of Appeals' exercise of jurisdiction over plaintiffs' interlocutory appeal, we address that issue first.

Unless the General Statutes of North Carolina provide an exception, "there is no right of immediate appeal from interlocutory orders." *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725 (1990). Subsection 1-277(a) states as follows:

> An appeal may be taken from every judicial order or determination of a judge of a superior or district court, upon or involving a matter of law or legal inference, whether made in or out of session, which affects a substantial right claimed in any action or proceeding; or which in effect determines the action, and prevents a judgment from which an appeal might be taken; or discontinues the action, or grants or refuses a new trial.

N.C.G.S. § 1-277(a) (2021); *see also* N.C.G.S. § 7A-27(b)(3)(a) (2021).

"The 'substantial right' test for appealability of interlocutory orders is that the right itself must be substantial and the deprivation of that right must potentially work injury if not corrected before appeal from final judgment." *Frost v. Mazda Motor of Am., Inc.*, 353 N.C. 188, 192 (2000) (cleaned up). "If appellant's rights would be

fully and adequately protected by an exception to the order that could then be assigned as error on appeal after final judgment, there is no right to an immediate appeal." *Id.* at 194 (cleaned up).

¶ 17 An assessment of whether an order impacts a substantial right often requires "considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered." *Waters v. Qualified Pers., Inc.*, 294 N.C. 200, 208 (1978). "It is the appellant's burden to present appropriate grounds for acceptance of an interlocutory appeal, and not the duty of this Court to construct arguments for or find support for appellant's right to appeal." *Hanesbrands Inc. v. Fowler*, 369 N.C. 216, 218 (2016) (cleaned up).

## A. Motions to Pay

¶ 18 Defendant beneficiaries argue that the Court of Appeals erred by exercising jurisdiction over plaintiffs' appeal of an interlocutory order. Specifically, they assert that "the trial court's order allowing [Goldman Sachs] to pay costs from the Revocable Trust to defend a presumptively valid amendment does not affect a substantial right because it only involves money in [the T]rust."

¶ 19 According to plaintiffs, "the Court of Appeals properly exercised immediate jurisdiction over the Pay Order because it purported to determine both that [defendant beneficiaries] alone should benefit from the Trust during the pendency of the litigation and that [plaintiffs] could not seek to be made whole even if they succeed

on the merits." The Court of Appeals held, in part, that the Pay Order was immediately appealable because "no return of funds . . . is guaranteed" on account of Goldman Sachs' "claims [that] it has no liability from distributing funds" pursuant to the Pay Order. *Wing*, 274 N.C. App. at 152. Plaintiffs maintain that *either*: (1) the Pay Order impacts a substantial right because as Goldman Sachs contends, "the existence of the Pay Order prevents [plaintiffs] from recovering the payments made to [defendant beneficiaries] during the pendency of this case—even if they are in violation of the true terms of the Trust and even if the Pay Order was erroneous" *or* (2) the Pay Order does not affect a substantial right because it does not preclude plaintiffs from obtaining a judgment against Goldman Sachs for distributions made to defendant beneficiaries after the entry of the Pay Order.

On the record before us, we agree that the Pay Order impacts a substantial right. The trial court received draft orders addressing the trial court's ruling on the motions to pay from both defendant beneficiaries and plaintiffs. Plaintiffs explained in their letter to the trial court that:

> The key disagreement between the parties [regarding the proposed order] is whether the [trial c]ourt intended to rule that [Goldman Sachs]:
>
> - *may* make distributions for legal fees defending the most recent trust amendment, subject to potential liability if that trust amendment is determined to be invalid; or

- *shall* make distributions for legal fees, without apparent liability, regardless of how the merits of the underlying claims are ultimately decided.

Plaintiffs' proposed order used "may," and defendant beneficiaries' proposed order used "shall." Plaintiffs' proposed order also stated: "This Order is without prejudice to any party's remaining claims and defenses in these matters, including [Wing]'s claim for wrongful distributions against Defendant Goldman Sachs."

The trial court utilized defendant beneficiaries' proposed order, which granted the motions to pay and ordered that:

> Defendant Goldman Sachs, as Trustee of the Revocable Trust . . . *shall*, in the proper exercise of its business judgment, make distributions to [defendant beneficiaries] for payment for legal fees incurred by them in the above-captioned cases with respect to their defense of this matter. This Order is without prejudice to any party's *other* remaining claims and defenses in these matters.

(Emphases added.) Notably, the trial court employed the word "shall" and did not explicitly indicate that the order was without prejudice to Wing's claim for wrongful distribution against Goldman Sachs.

Given this procedural context and record, the Pay Order does not purport to simply "allow" Goldman Sachs to pay costs from the Trust as defendant beneficiaries contend. Rather, the record supports the Court of Appeals' conclusion that the "order affirmatively order[s] payments by a trustee with distributions from a trust to some purported beneficiaries, and not others, when the rightful beneficiaries are disputed,"

*Wing*, 274 N.C. App. at 151, and "[i]f Wing prevails on her claims of wrongful distribution [against Goldman Sachs], no return of funds or credit to offset future payments is guaranteed[,]" *id.* at 152.

¶ 24 Before this Court, Goldman Sachs has argued that no court can hold Goldman Sachs liable for paying defendant beneficiaries' litigation expenses pursuant to the Pay Order even if reversed on appeal. Yet, subsection 36C-6-604(b) of the North Carolina Uniform Trust Code imposes liability on trustees for distributions of trust property when the trustee knows of a pending judicial proceeding contesting the validity of the trust. N.C.G.S. § 36C-6-604(b) (2021). Pursuant to this subsection, plaintiffs, as beneficiaries under the alleged last valid amendment to the Trust, could seek to hold Goldman Sachs liable for distributions if successful in this litigation. In other words, plaintiffs have a potential right under N.C.G.S. § 36C-6-604(b).

¶ 25 Nevertheless, the trial court's order pursuant to its authority "to determine any question arising in the administration or distribution of any trust," N.C.G.S. § 36C-2-203(a)(9) (2021), directed Goldman Sachs to make distributions to defendant beneficiaries for their litigation legal fees, which defendant beneficiaries incurred after "[t]he trustee kn[ew] of a pending judicial proceeding contesting the validity of the trust," N.C.G.S. § 36C-6-604(b)(1). When a trial court has jurisdiction over both the parties and the subject matter, an order by the trial court enjoining or directing conduct binds the parties even if erroneous unless or until it is vacated or modified

by the trial court or in the action on appeal. *Elder v. Barnes*, 219 N.C. 411, 415 (1941); *Hearne v. Stanly Cnty.*, 188 N.C. 45, 51 (1924). Thus, Goldman Sachs is bound to abide by the trial court's order. *Cf. Elder*, 219 N.C. at 415–16 (affirming an order "adjudging the defendant in contempt of court for willful disobedience to an order lawfully issued"); *Hearne*, 188 N.C. at 51 (recognizing that an act in violation of an injunction "then alive and in force" is "an unlawful act"). As John V. Orth, an amicus in this matter and a Professor of Law at the University of North Carolina School of Law explained in his amicus brief:

> Where instructions are sought from a [trial] court, it is essential to the efficient administration of trusts that the trustee be able to rely on such instructions. . . . Penalizing a trustee for obeying the order of a court of competent jurisdiction, even if ultimately found to be erroneous, would confound trust administration, unsettle expectations, and jeopardize the rule of law.

We conclude herein that the trial court did have jurisdiction and that the trial court directed distributions. Further, we agree that in the context of this case where instruction concerning trust distributions from the trial court has been sought and provided by lawful order, if not appealed before final judgment, plaintiffs might not have been able to recover from Goldman Sachs for distributions made in accordance with the Pay Order pursuant to N.C.G.S. § 36C-6-604(b) even if they successfully established themselves as the rightful beneficiaries under the Trust. In other words, the Pay Order may determine Wing's wrongful distribution claim under N.C.G.S.

§ 36C-6-604(b) by foreclosing monetary recovery from Goldman Sachs from the date of entry of the Pay Order, 20 May 2019, until modified by the trial court or reversed in the action on appeal. *See Frost*, 353 N.C. at 192, 193 ("The *denial* of class certification has been held to affect a substantial right because it determines the action as to the unnamed plaintiffs."). Moreover, it is also important to ensure that persons serving as trustees be able to obtain definitive instructions concerning the manner in which a trust should be administered. Thus, in this case, the right to collect from Goldman Sachs, as trustee, for the distributions during a pending judicial proceeding contesting the validity of the trust during that time period might be lost absent an appeal before final judgment of the Pay Order. *Cf. id.* at 194 (holding that an order imposing costs on a party was not immediately reviewable because it could be reviewed upon appeal from a final judgment and thus would not be "lost or irremediably adversely affected"). Thus, for all of these reasons, we are convinced that, absent an appeal before final judgment, a substantial right of plaintiffs will potentially be impaired in the absence of an immediate appeal from the Pay Order.

**B. Motion to Freeze**

Defendant beneficiaries also argue that the Court of Appeals lacked jurisdiction to review the trial court's ruling on Wing's motion to freeze. Defendant beneficiaries contend that plaintiffs did not appeal this ruling. Plaintiffs expressly indicated in their reply brief before the Court of Appeals that "no one has appealed

that portion of the order," and thus the Court of Appeals "does not have jurisdiction to review it." Before this Court, plaintiffs concede that they did not appeal the portion of the trial court's order denying the motion to freeze and it was not before the Court of Appeals. Thus, we conclude that the Court of Appeals erred by addressing the motion to freeze and by remanding to the trial court for entry of an order allowing the motion to freeze. *Wing*, 274 N.C. App. at 156. Accordingly, we vacate the portions of the Court of Appeals' decision addressing the motion to freeze.

### IV.    Analysis

### A. Trial Court's Subject Matter Jurisdiction

¶ 28        We first consider plaintiffs' challenge to the trial court's subject matter jurisdiction to grant the motions to pay. Within the actions commenced by plaintiffs, defendant beneficiaries filed the motions to pay, and Goldman Sachs, as trustee, filed a brief supporting the motions to pay. Here, plaintiffs for the first time claim that Goldman Sachs or defendant beneficiaries had to file a pleading seeking instruction concerning the Trust for the trial court to have jurisdiction. However, plaintiffs acknowledge that trial courts have the authority to enter orders providing trust instructions.

¶ 29        "Whether or not a trial court possesses subject-matter jurisdiction is a question of law that is reviewed de novo." *In re A.L.L.*, 376 N.C. 99, 101 (2020). "Challenges to a trial court's subject-matter jurisdiction may be raised at any stage of proceedings,

including for the first time before this Court." *Id.* (cleaned up). However, "[t]his Court presumes the trial court has properly exercised jurisdiction unless the party challenging jurisdiction meets its burden of showing otherwise." *In re L.T.*, 374 N.C. 567, 569 (2020).

¶ 30　　The legislature has established the subject matter jurisdiction of clerks of superior court and of the superior court division of the General Court of Justice in the North Carolina Uniform Trust Code. N.C.G.S. § 36C-2-203. Specifically, Article 2 of the North Carolina Uniform Trust Code, Judicial Proceedings, contains a statute entitled "Subject matter jurisdiction." N.C.G.S. § 36C-2-203. Subsection 36C-2-203(a) "make[s] clear that the clerk of court and the superior court division of the General Court of Justice have concurrent jurisdiction," N.C.G.S. § 36C-2-203 supp. N.C. cmt. 2007 (2021), over proceedings "to determine any question arising in the administration or distribution of any trust," N.C.G.S. § 36C-2-203(a)(9).

¶ 31　　"In resolving issues of statutory construction, we look first to the language of the statute itself." *Hieb v. Lowery*, 344 N.C. 403, 409 (1996).

> When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required. . . .
>
> An unambiguous word has a definite and well[-]known sense in the law. In the event that the General Assembly uses an unambiguous word without providing an explicit statutory definition, that word will be accorded its plain meaning.

*Fid. Bank v. N.C. Dep't of Revenue*, 370 N.C. 10, 18–19 (2017) (cleaned up). "To determine the plain meaning, this Court has looked to dictionaries as a guide." *Raleigh Hous. Auth. v. Winston*, 376 N.C. 790, 2021-NCSC-16, ¶ 8.

¶ 32 Notably, N.C.G.S. § 36C-2-203(a) uses the term "proceedings" when describing the concurrent jurisdiction. N.C.G.S. § 36C-2-203(a). "Proceedings," by itself, is not a specifically defined term in the North Carolina Uniform Trust Code. *See* N.C.G.S. §§ 36C-1-101 to -11-1106 (2021).[2] Definitions of "proceeding" include:

> 1. The regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment. 2. Any procedural means for seeking redress from a tribunal or agency. 3. An act or step that is part of a larger action. 4. The business conducted by a court or other official body; a hearing.

*Proceeding*, *Black's Law Dictionary* (11th ed. 2019) (including all definitions of "proceeding" by itself except for the definition specifically designated for bankruptcy); *Proceedings*, *New Oxford American Dictionary* (3rd ed. 2010) (defining "proceedings" to include an "action taken in a court to settle a dispute").

---

[2] However, the North Carolina Uniform Trust Code delineates proceedings that fall within "proceedings concerning the internal affairs of trusts," N.C.G.S. § 36C-2-203(a) (2021), and "a proceeding to enforce a charitable trust," N.C.G.S. § 36C-4-405.1(a) (2021); *see also* N.C.G.S. § 36C-2-201(c) (2021) ("A judicial proceeding involving a trust may relate to any matter involving the trust's administration, including a request for instructions and an action to declare rights.").

¶ 33        The term pleading is not used in N.C.G.S. § 36C-2-203. *See* N.C.G.S. § 36C-2-203. A "pleading" is "[a] formal document in which a party to a legal proceeding (esp. a civil lawsuit) sets forth or responds to allegations, claims, denials, or defenses." *Pleading, Black's Law Dictionary* (11th ed. 2019); *see also Complaint, Black's Law Dictionary* (11th ed. 2019) ("The initial pleading that starts a civil action and states the basis for the court's jurisdiction, the basis for the plaintiff's claim, and the demand for relief. In some states, this pleading is called a petition." (cleaned up)). Plaintiffs argue that Goldman Sachs or defendant beneficiaries had to file a pleading for the trial court to have jurisdiction, instead of a motion within the actions commenced by plaintiffs' pleadings. However, the plain language of the term used in the statute on subject matter jurisdiction, "proceedings," is much broader and contains no such additional limiting language.

¶ 34        Also, under Article 2, N.C.G.S. § 36C-2-201(a) provides that: "The court may intervene in the administration of a trust to the extent its jurisdiction is *invoked* by a party or as provided by law." N.C.G.S. § 36C-2-201(a) (emphasis added). "Invoked" is not a defined term and is not used elsewhere in the North Carolina Uniform Trust Code. *See* N.C.G.S. §§ 36C-1-101 to -11-1106. While not defined in Black's Law Dictionary, definitions of "invoke" from other dictionaries include "[t]o call on (a higher power) for assistance [and] support," "[t]o call for earnestly; solicit," *Invoke, American Heritage Dictionary* (5th ed. 2018), and "cite or appeal to (someone or

something) as an authority for an action," *Invoke*, *New Oxford American Dictionary* (3rd ed. 2010). Thus, the plain meaning of the word "invoke" encompasses conduct other than the filing of a pleading with the trial court. And defendant beneficiaries' filing of a motion within the actions commenced by plaintiffs' pleadings falls within the broad meaning of the term "invoke."

¶ 35        Plaintiffs also argue that another subsection of the North Carolina Uniform Trust Code, N.C.G.S § 36C-2-205(a), supports their position in that it provides that parties shall commence trust proceedings before the clerk of superior court by filing a complaint as in civil actions. Given our adherence to the plain language of a statute, generally, the legislature has not shown an intent for a statutory requirement "to function as prerequisites for . . . jurisdiction" when the legislature neither mentions jurisdiction in the statute nor references it in the statute entitled "jurisdiction." *In re D.S.*, 364 N.C. 184, 193–94 (2010). On its face, N.C.G.S. § 36C-2-205(a) does not mention jurisdiction, and N.C.G.S. § 36C-2-205(a) is not mentioned in the statute dedicated to subject matter jurisdiction, N.C.G.S. § 36C-2-203.

¶ 36        Because the language employed by the legislature in §§ 36C-2-201, -203, and -205 does not reflect a jurisdictional pleading requirement and defendant beneficiaries filed the motions to pay in the actions commenced by plaintiffs' complaint, we reject plaintiffs' contention that the trial court lacked subject matter jurisdiction to address the motions to pay. "[I]t is our duty to give effect to the words

actually used in a statute and not to delete words used or to insert words not used." *Lunsford v. Mills*, 367 N.C. 618, 623 (2014). Plaintiffs have not met their burden; they have not shown that the language or the structure of the North Carolina Uniform Trust Code shows an intent by the legislature to require a subsequent pleading for subject matter jurisdiction in the procedural context presented to us in this case.

**B. Duty to Defend**

¶ 37        Goldman Sachs and defendant beneficiaries submit that Goldman Sachs, as trustee, has the duty to pay defendant beneficiaries' litigation expenses arising from these proceedings and that the Court of Appeals erred by holding otherwise. Defendant beneficiaries also maintain that the North Carolina Uniform Trust Code allows a trustee to exercise its business judgment to provide for the defense of the Fifth Amendment to the Trust, which the Court of Appeals erroneously failed to recognize. They present several arguments in support of their positions.

¶ 38        First, Goldman Sachs contends that "[a] party's final trust document . . . is presumed valid and the trustee must act according to the instructions set forth within that document." For this proposition, Goldman Sachs relies on a Court of Appeals' decision, *In re Estate of Phillips*, 251 N.C. App. 99 (2016). Yet, *Phillips* does not address a trust, a trustee's duties or actions, or a document's presumption of validity. *See id.* at 110–11, 113–14. Rather, it states: "The presumption is that every individual has the requisite capacity to make a will, and those challenging the will bear the

burden of proving, by the greater weight of the evidence, that such capacity was wanting." *Id.* at 110 (cleaned up). As presented to us by Goldman Sachs, we do not see the relevance of this case to the proposition that a trust document is presumed valid.

¶ 39 Defendant beneficiaries make the same argument—a revocable trust is presumptively valid upon a settlor's death. However, the caselaw relied on by defendant beneficiaries recognizes that "the probate of a will by the Clerk of Superior Court is a judicial act, and his certificate is conclusive evidence of the validity of the will, until vacated on appeal, or declared void by a competent tribunal in a proceeding instituted for that purpose." *Walters v. Baptist Child.'s Home of N.C., Inc.*, 251 N.C. 369, 377 (1959); *In re Will of Neal*, 227 N.C. 136, 138 (1947) (same). Thus, the presumption of validity in *Walters* and *Neal* arises from the judicial act of probate taken by the clerk of superior court. A settlor's death is not a judicial act, and none of the cases cited by defendant beneficiaries address a trust. Therefore, we do not find these cases persuasive.[3]

¶ 40 The North Carolina Uniform Trust Code also contradicts Goldman Sachs' and defendant beneficiaries' proposition. Subsection 36C-6-604(b) states as follows:

---

[3] The General Assembly has also provided by statute that "[s]uch record and probate is conclusive in evidence of the validity of the will, until it is vacated on appeal or declared void by a competent tribunal." N.C.G.S. § 28A-2A-12 (2021). The North Carolina Uniform Trust Code contains no such statute to this effect concerning the validity of a trust. *See* N.C.G.S. §§ 36C-1-101 to -11-1106 (2021).

> Upon the death of the settlor of a trust that was revocable at the settlor's death, the trustee *may* proceed to distribute the trust property in accordance with the terms of the trust. *The trustee is not subject to liability for doing so unless*:
>
> (1) *The trustee knows of a pending judicial proceeding contesting the validity of the trust*; or
>
> (2) A potential contestant has notified the trustee of a possible judicial proceeding to contest the trust, and a judicial proceeding is commenced within 60 days after the contestant sent the notification.

N.C.G.S. § 36C-6-604(b) (emphases added). Notably, "may" is used, not "shall." "The word 'may,' as used in statutes, in its ordinary sense, is permissive and not mandatory." *Rector v. Rector*, 186 N.C. 618, 620 (1923); *see also State v. Waycaster*, 375 N.C. 232, 240 (2020) ("This Court has repeatedly interpreted the General Assembly's usage of the word 'may' as having a permissive—as opposed to a mandatory—effect.").

¶ 41 Further, if "[a] party's final trust document . . . is presumed valid and the trustee must act according to the instructions set forth within that document" as Goldman Sachs contends, then a trustee would always be required to distribute the trust proceeds and be subject to liability for doing so pursuant to N.C.G.S. § 36C-6-604(b). We are not convinced that the legislature intended this result.

¶ 42        Therefore, based on the arguments before us, we are not persuaded that the Court of Appeals erred by "fail[ing] to acknowledge the presumptive validity of the Trust Document."

¶ 43        However, we agree with Goldman Sachs' and defendant beneficiaries' second argument that the Court of Appeals erred by applying N.C.G.S. § 31-36, a statute applicable to will caveats, to this trust proceeding. Plaintiffs concur that the Court of Appeals erred by concluding that N.C.G.S. § 31-36 was controlling in this trust proceeding but contend it is persuasive.

¶ 44        Under the North Carolina Uniform Trust Code, N.C.G.S. § 36C-1-112 provides that: "The rules of construction that apply in this State to the interpretation of and disposition of property by will also apply as appropriate to the interpretation of the terms of a trust and the disposition of the trust property." N.C.G.S. § 36C-1-112 (2021). Relying on this provision, the Court of Appeals stated:

> N.C.[G.S.] § 31-36(a)(1) provides the framework for the case before us. Plaintiff[s'] challenge of the purported amendments is comparable to a caveat to determine who the rightful beneficiaries should be. The plain text of the statute directs the clerk of the superior court to order the executor or administrator to freeze all distributions until the caveat is resolved.

*Wing*, 274 N.C. App. at 153.

¶ 45        The subsection cited by the Court of Appeals, N.C.G.S. § 31-36(a)(1), is in the chapter on "Wills," Chapter 31, and entitled "Effect of caveat on estate administration." N.C.G.S. § 31-36 (2021). It provides that:

> Where a caveat is filed, the clerk of the superior court shall forthwith issue an order that shall apply during the pendency of the caveat to any personal representative, having the estate in charge, . . . [t]hat there shall be no distributions of assets of the estate to any beneficiary[.]

N.C.G.S. § 31-36(a).

¶ 46        Goldman Sachs argues that this is a procedural rule, and N.C.G.S. § 36C-1-112 "applies only to 'rules of construction.'" Goldman Sachs and defendant beneficiaries cite the official comment to N.C.G.S. § 36C-1-112, which describes rules of construction as "specific in nature, providing guidance for resolving specific situations or construing specific terms." N.C.G.S. § 36C-1-112 off. cmt. (2021). The official comment further states that rules of construction "can involve the meaning to be given to particular language in the document, such as the meaning to be given to 'heirs' or 'issue,'" and "address situations the donor failed to anticipate . . . [like] failure to anticipate the predecease of a beneficiary." *Id.*; *see also Construction*, *Black's Law Dictionary* (11th ed. 2019) (defining construction as "[t]he act or process of interpreting or explaining the meaning of a writing (usu. a constitution, statute, or other legal instrument); the ascertainment of a document's sense in accordance with established judicial standards; INTERPRETATION"). The North Carolina comment

states: "This section is intended to make all rules of construction applicable to wills also applicable to trusts, including but not limited to the rules governing abatement." N.C.G.S. § 36C-1-112 N.C. cmt. (2021).

¶ 47    Subsection 31-36(a)(1) does not address the act or process of interpreting a will, whether a term or an unanticipated situation that impacts the disposition of property under the will. Therefore, N.C.G.S. § 31-36(a)(1) is not applicable to trust proceedings pursuant to N.C.G.S. § 36C-1-112 of the North Carolina Uniform Trust Code. In other words, N.C.G.S. § 31-36(a)(1) is not a rule of construction. Additionally, N.C.G.S. § 31-36(a)(1), which requires a cessation of distributions upon the filing of a will caveat, is contrary to N.C.G.S. § 36C-6-604, which permits distributions by the trustee during a pending judicial proceeding challenging a trust albeit subject to potential liability. Thus, the Court of Appeals erred by relying on N.C.G.S. § 31-36(a)(1) as the framework for its analysis in this trust proceeding.

¶ 48    Finally, we reach the fundamental issue and alleged error by the Court of Appeals—whether Goldman Sachs, as trustee, has a duty to pay defendant beneficiaries' litigation expenses based on a duty to defend under the North Carolina Uniform Trust Code, specifically N.C.G.S. § 36C-8-811. "We review matters of statutory interpretation de novo because they present questions of law." *In re Foreclosure of Vogler Realty, Inc.*, 365 N.C. 389, 392 (2012).

¶ 49        In this matter, the Court of Appeals concluded that Goldman Sachs, as trustee, did not "ha[ve] a duty to defend the purported amendments during pending litigation between purported beneficiaries," *Wing*, 274 N.C. App. at 154, and reversed the Pay Order, *id.* at 156. Finding the reasoning of two California Courts of Appeal's cases persuasive, the Court of Appeals applied their reasoning to this case to hold that because the trust was not in peril and, instead, this case involves a dispute between rightful beneficiaries, the trustee was not required to pay attorney fees or legal costs. *Id.* at 154–55.

¶ 50        Both Goldman Sachs and defendant beneficiaries insist that the Court of Appeals improperly relied on the two California cases. From our close analysis of the North Carolina Uniform Trust Code, its comments, and North Carolina common law, we are persuaded that the Court of Appeals erred by looking to caselaw from other jurisdictions before the law of this State. The Court of Appeals did not need to consider caselaw from other jurisdictions to resolve the appeal.

¶ 51        Our legislature adopted verbatim section 811 of the Uniform Trust Code and codified it as N.C.G.S. § 36C-8-811. *Compare* Unif. Tr. Code § 811 (Unif. L. Comm'n 2000) (amended 2003), *with* N.C.G.S. § 36C-8-811. When enacting the North Carolina Uniform Trust Code in 2005, the legislature also directed that "all relevant portions of the Official Commentary to the Uniform Trust Code" be printed with the enactments. An Act to Adopt a Revised Version of the Uniform Trust Code for North

Carolina, S.L. 2005-192, § 6, 2005 Sess. Laws 345, 403. The official comment to

N.C.G.S. § 36C-8-811 reflects verbatim the comment to section 811 of the Uniform

Trust Code. *Compare* Unif. Tr. Code § 811 cmt., *with* N.C.G.S. § 36C-8-811 off. cmt.

(2021).

¶ 52          Specifically, N.C.G.S. § 36C-8-811 provides that: "A trustee *shall* take

reasonable steps to enforce claims of the trust and to defend claims *against the trust*."

N.C.G.S. § 36C-8-811 (emphases added). "Trust" is not a defined term in the North

Carolina Uniform Trust Code, *see* N.C.G.S. §§ 36C-1-101 to -11-1106,[4] and the

definitions in Black's Law Dictionary are varied as follows:

> 1.  The right, enforceable solely in equity to the beneficial enjoyment of property to which another person holds the legal title; a property interest held by one person (the *trustee*) at the request of another (the *settlor*) for the benefit of a third party (the *beneficiary*). • For a trust to be valid, it must involve specific property, reflect the settlor's intent, and be created for a lawful purpose. The two primary types of trust are *private trusts* and *charitable trusts* (see below). 2. A fiduciary relationship regarding property and charging the person with title to the property with equitable duties to deal with it for another's benefit; the confidence placed in a trustee, together with the trustee's obligations toward the property and the beneficiary. • A trust arises as the result of a manifestation of an intent to create it. See FIDUCIARY RELATIONSHIP. 3. The property so held; CORPUS (1).

---

[4] However, the North Carolina Uniform Trust Code provides definitions for types of trusts. *See, e.g.*, N.C.G.S. § 36C-1-103(4) (defining "Charitable trust").

*Trust*, *Black's Law Dictionary* (11th ed. 2019). Given these varied definitions, all of which could reasonably apply to N.C.G.S. § 36C-8-811, the plain meaning of the term "trust" is not ascertainable by merely referencing the statutory language and a dictionary.

However, the official comment to the statute states as follows:

> This section codifies the substance of Sections 177 and 178 of the Restatement (Second) of Trusts (1959). It may not be reasonable to enforce a claim depending upon the likelihood of recovery and the cost of suit and enforcement. It might also be reasonable to settle an action or suffer a default rather than to defend an action. *See also* Section 816(14) (power to pay, contest, settle, or release claims).

N.C.G.S. § 36C-8-811 off. cmt.

Since "trust" is neither a defined term nor unambiguous and the comment states that "[t]his section codifies the substance of Section[ ] . . . 178 of the Restatement (Second) of Trusts (1959)," we construe the trustee's obligation "to defend claims against the trust" under N.C.G.S. § 36C-8-811 to be the equivalent to the Restatement (Second) of Trusts § 178. This Court routinely references the official commentary to a statutory provision to discern the legislature's intent when a statute is ambiguous. *Parsons v. Jefferson-Pilot Corp.*, 333 N.C. 420, 425 (1993); *see also State v. Jones*, 371 N.C. 548, 554 (2018) ("This seeming inconsistency between and among the statutory enactments at issue in the present case is readily resolved by the Official Commentary to Article 49 of the North Carolina General Statutes."); *State v.*

*Capps*, 374 N.C. 621, 626–27 (2020); *Gyger v. Clement*, 375 N.C. 80, 83–84 (2020). When the legislature explicitly instructs the revisor of statutes to print the commentary with the statute, *see* § 6, 2005 Sess. Laws at 403, such reliance appears particularly appropriate. *See Parsons*, 333 N.C. at 425.

¶ 55        Section 178 of the Restatement (Second) of Trusts states that: "The trustee is under a duty to the beneficiary to defend actions which may result *in a loss to the trust estate*, unless under all the circumstances it is reasonable not to make such defense." Restatement (Second) of Trusts § 178 (Am. L. Inst. 1959) (emphasis added). The trust estate is "[t]he property for which a trustee is responsible; the trust principal." *Corpus, Black's Law Dictionary* (11th ed. 2019) (noting "corpus" is also known as "res; trust estate; trust fund; trust property; trust res; trust" (emphasis omitted)); *see also Trust Estate, Black's Law Dictionary* (11th ed. 2019) (referring to first definition of corpus).

¶ 56        Another term for "trust estate" is "trust." *Corpus, Black's Law Dictionary* (11th ed. 2019). And one of the definitions of trust is "[t]he property so held; CORPUS (1)." *Trust, Black's Law Dictionary* (11th ed. 2019). Another definition of trust is "a property interest held by one person (the *trustee*) at the request of another (the *settlor*) for the benefit of a third party (the *beneficiary*)." *Trust, Black's Law Dictionary* (11th ed. 2019). Thus, the legislature's use of the term "trust" in N.C.G.S. § 36C-8-811 is

consistent with the substance of Restatement (Second) of Trusts § 178, and we

construe N.C.G.S. § 36C-8-811 to maintain that consistency.

¶ 57        Restatement (Second) of Trusts § 178 is also consistent with the common law

of this State.[5] In *Belcher v. Cobb*, 169 N.C. 689 (1915), this Court, recognized the "self-

evident" "duty of the trustee to defend and protect the title to the trust estate and

defend the action in good faith." *Id.* at 693. Later, in *Chinnis v. Cobb*, 210 N.C. 104

(1936), this Court concluded that a trustee could appeal and argue the invalidity of

an attachment levied on a beneficiary of a spendthrift trust. *Id.* at 110. This Court

stated as follows:

> But it is not only the right but the duty of a trustee
> to protect and defend the title to the trust estate. . . . He
> holds the property under the will as trustee for the
> purposes expressed in the devise. . . . In order to carry out
> the purposes of the trust and perform the duties imposed
> upon him, it is incumbent on him to preserve and protect
> the trust property, and for that purpose may appear and
> defend the action for all purposes in this Court as well as
> the court below.

*Id.* at 110.

¶ 58        Notably, Goldman Sachs also concedes that whether a trustee has a duty to

defend claims challenging the validity of a trust instrument that amends and restates

a prior trust instrument is an issue of first impression in this State. Goldman Sachs

---

[5] *Cf.* N.C.G.S. § 36C-1-106 ("The common law of trusts and principles of equity supplement this Chapter, except to the extent modified by this Chapter or another statute of this State.").

additionally indicates that it has "not identified any jurisdiction applying the Uniform Trust Code, which governs North Carolina's trust laws, that has addressed this precise question." Nevertheless, Goldman Sachs asks this Court to hold that plaintiffs' claims seeking to invalidate the Fifth Amendment to the Trust are "an attack on the validity of the trust itself" because "[n]o consultation to other versions of that document is necessary in order to determine the parties' rights and obligations." Goldman Sachs cites in support of its position George Gleason Bogert's treatise, *The Law of Trusts and Trustees* § 581, as updated in November 2020. Goldman Sachs also cites a reporter's note to a section in the Restatement (Third) of Trusts that relies on a Bogert hornbook. Similarly, defendant beneficiaries contend that Goldman Sachs, as trustee, has a duty to defend the current terms of a trust, in this case the Fifth Amendment, against all trust contests initiated pursuant to N.C.G.S. § 36C-6-604(a).

However, the legislature stated that a trustee "shall take reasonable steps . . . to defend claims against the trust." N.C.G.S. § 36C-8-811. It did not use the term "trust instrument," "terms of the trust," "contest," or reference N.C.G.S. § 36C-6-604. *Id.* "Trust instrument" and "[t]erms of a trust" are defined in N.C.G.S. § 36C-1-103. A "[t]rust instrument" is "[a]n instrument that contains the terms of a trust." N.C.G.S. § 36C-1-103(21). "Terms of a trust" means "[t]he manifestation of the settlor's intent regarding a trust's provisions as expressed in the trust instrument or

as established, determined, or amended by . . . [a] judicial proceeding" and other means set forth in the statute. N.C.G.S. § 36C-1-103(20). "A 'contest' is an action to invalidate all or part of the terms of the trust or of property transfers to the trustee" according to the official comment to N.C.G.S. § 36C-6-604. N.C.G.S. § 36C-6-604 off. cmt. (2021).

¶ 60    In contrast, "trust estate" is not defined in the North Carolina Uniform Trust Code, *see* N.C.G.S. §§ 36C-1-101 to -11-1106, and "trust" can mean "trust estate," *Corpus, Black's Law Dictionary* (11th ed. 2019) (identifying "trust" and "trust estate" as synonyms of "corpus"); *see also Trust, Black's Law Dictionary* (11th ed. 2019) (defining trust as the property held in trust or property and the property interest held by the trustee). The official commentary to N.C.G.S. § 36C-8-811 also plainly restricts the statute's meaning to a specific provision of the Restatement (Second) of Trusts, N.C.G.S. § 36C-8-811 off. cmt., which limits the duty to defend to "actions which may result in a loss to the trust estate," Restatement (Second) of Trusts § 178 (Am. L. Inst. 1959). Not all trust contests or challenges to a trust's terms may result in a loss to the trust estate.

¶ 61    Moreover, since the first publication of Bogert's treatise, and in subsequent editions, section 581 has essentially stated as follows:

> An effort to invalidate or prejudice a trust may be made in a number of different ways by one or more of several groups of parties. The settlor himself may seek to set aside the trust conveyance on the ground of fraud,

undue influence, duress, or similar reason, or his successors in interest may seek a decree of invalidation for these reasons or because of the mental incapacity of the settlor. The creditors of the settlor may attack the trust on the ground that it was executed in fraud of them. A claim may be made that the trust violates a rule against perpetuities, a mortmain act, or similar statutory or common-law rule of policy. The beneficiaries may seek to terminate the trust prematurely. Creditors of a cestui may sue to reach the interest of the cestui, which may or may not be protected by spendthrift provisions.

Is it the duty of the trustee to defend suits of this type which will wholly invalidate the trust or will reduce its scope and effect? Or may the trustee stand passive? It is believed that equity imposes upon the trustee the duty of defending the integrity of the trust, if he has reasonable ground for believing that the attack is unjustified or if he is reasonably in doubt on that subject. Where it ought to be entirely clear to any person of ordinary intelligence, after taking legal advice, that the attack is warranted and that the trust is defective and should be set aside in whole or in part, or that for other reason a defense would be futile or unnecessary, the trustee has no duty to incur expense to defend the suit.

George Gleason Bogert, *The Law of Trusts and Trustees* § 581 (1st ed. 1935) (footnotes omitted); *see also* George Gleason Bogert, *The Law of Trusts and Trustees* § 581 (2d ed. 1960); George Gleason Bogert, *The Law of Trusts and Trustees* § 581 (Rev. 2d ed. 1980) (last supplemented 2021).

This passage does not squarely address the situation before this Court and the trial court: a challenge to the validity of a trust instrument that amends and restates a prior trust instrument. Instead, the passage summarizes the array of ways a trust

may be wholly invalidated in its entirety or the trust estate may be prejudiced. On the record and arguments before us, the challenged amendments to the Trust impact who the beneficiaries are, not the scope or effect of the trust estate and not the entire validity of the Trust.[6] Therefore, we find the proposition stated in Bogert's treatise consistent with our recognition that when a party seeks to invalidate an amendment to a trust on account of the incompetency of the grantor or undue influence over the grantor, a duty to defend pursuant to N.C.G.S. § 36C-8-811 could apply but only if such claim against the trust may result in a loss to the trust estate.

¶ 63        However, the North Carolina Uniform Trust Code grants powers to trustees that are broader than duties. N.C.G.S. § 36C-8-815 off. cmt. (2021). As explained in the official comment to N.C.G.S. § 36C-8-815, which addresses the general powers of the trustee:

> A power differs from a duty. A duty imposes an obligation or a mandatory prohibition. A power, on the other hand, is a discretion, the exercise of which is not obligatory. The existence of a power, however created or granted, does not speak to the question of whether it is prudent under the circumstances to exercise the power.

---

[6] However, we acknowledge that the revocation of the challenged amendments may result in a loss to the trust estate, but that is not before us. While defendant beneficiaries and Goldman Sachs allude to tax benefits arising from the amendment and decedent's marriage to Sellers, they neither raised this as a basis for the trustee's duty before the trial court nor did the trial court reach this issue.

N.C.G.S. § 36C-8-815 off. cmt. The North Carolina Uniform Trust Code provides that the trustee has "[a]ll powers over the trust property that an unmarried competent owner has over individually owned property," N.C.G.S. § 36C-8-815(a)(2)(a), and may "defend an action, claim, or judicial proceeding in any jurisdiction to protect trust property and the trustee in the performance of the trustee's duties," N.C.G.S. § 36C-8-816(24).

¶ 64    Such discretionary power is much broader than the trustee's *duty* "to defend claims against the trust" under N.C.G.S. § 36C-8-811. These provisions are broad and sufficient to permit Goldman Sachs, in its discretion and in this action, to make distributions to defendant beneficiaries for their litigation expenses and incur litigation expenses as an administrative expense of the Trust. However, since these are discretionary powers, not duties, in certain circumstances, it may be a breach of a trustee's other duties to do so. *See* N.C.G.S. § 36C-8-815(b) ("No provision of this section shall relieve a trustee of the fiduciary duties under this Article.").[7]

¶ 65    Here, the trial court used one of defendant beneficiaries' proposed orders, granted the motions to pay, and ordered that:

> Defendant Goldman Sachs, as Trustee of the Revocable
> Trust . . . shall, in the proper exercise of its business
> judgment, make distributions to [defendant beneficiaries]
> for payment for legal fees incurred by them in the above-
> captioned cases with respect to their defense of this matter.

---

[7] Whether Goldman Sachs breached other duties is not before us, and thus, we do not address that question.

> This Order is without prejudice to any party's other remaining claims and defenses in these matters.

The trial court did not conclude that Goldman Sachs, as trustee, had a duty to defend. The trial court instead ordered "*distributions*" to defendant beneficiaries "for payment for legal fees incurred by *them*" for "*their* defense of this matter." (Emphases added.) In contrast, defendant beneficiaries' other proposed order, which the trial court declined to use, included a conclusion that Goldman Sachs had a duty to defend the Fifth Amendment as the operative trust document. Thus, we conclude that the trial court's order only compelled Goldman Sachs, as trustee, to make distributions to defendant beneficiaries. The trial court compelled this conduct even though Goldman Sachs had knowledge of "a pending judicial proceeding contesting the validity of the trust." *See* N.C.G.S. § 36C-6-604(b)(1).

As such, we conclude that the trial court acted within the scope of its jurisdiction to determine a question arising in the distribution of a trust, *see* N.C.G.S. § 36C-2-203(a), when presented with a request for instruction and proposed order from defendant beneficiaries and Goldman Sachs, *see* N.C.G.S. § 36C-2-201. Consistent with our holdings herein, the trial court compelled conduct permitted by the North Carolina Uniform Trust Code as a power—at the request of Goldman Sachs, who as trustee holds the discretionary power to perform the requested conduct. *See* N.C.G.S. §§ 36C-8-815(a)(2)(a), -816. And competent evidence in the record supports the trial court's conclusion to compel this conduct. Goldman Sachs and

defendant beneficiaries cited and produced affidavits in support of decedent's competency around the time of the execution of the Fifth Amendment as well as other documents in support of the motions to pay and their position that plaintiffs' claims are unjustified. Plaintiffs, in contrast, did not respond with any evidence. Thus, regardless of the standard of review applicable to our review of the trial court's Pay Order, whether for abuse of discretion, for competent evidence, or de novo, we discern no error in the Pay Order justifying reversal. Therefore, we conclude that the Court of Appeals erred by reversing the Pay Order.

**C. Duty of Neutrality**

¶ 68        Goldman Sachs also contends that the Court of Appeals erred by concluding that "Goldman Sachs has breached their duty of neutrality by deciding who the rightful beneficiaries are before pending litigation has resolved that issue." *Wing*, 274 N.C. App. at 155. We agree. Plaintiffs have not pled that Goldman Sachs breached its duty of neutrality, and the appealed order, the Pay Order, does not purport to resolve any such claim or require consideration of this issue to resolve the appeal. Therefore, we express no opinion concerning whether a duty of neutrality exists or would impact this matter.

## V.    Conclusion

¶ 69        In summary, the trial court had jurisdiction and did not err by instructing Goldman Sachs, as trustee, to pay defendant beneficiaries' litigation expenses as

distributions in this action. Goldman Sachs had the power to in its discretion make such payments, and the record supports the trial court's direction requiring the exercise of that power. As the trial court did not find that Goldman Sachs had a duty to defend and the record on this issue is not developed, we do not address whether Goldman Sachs has a duty to defend this action, but we do hold that a duty to defend pursuant to N.C.G.S. § 36C-8-811 only arises when the action may result in a loss to the trust estate. When addressing this appeal, the Court of Appeals erred in several ways as addressed in this opinion. As a result, we vacate the portions of the Court of Appeals' decision that addressed the order on the motion to freeze and the duty of neutrality and reverse the remainder of the decision.

VACATED IN PART; REVERSED IN PART.